# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SPIN MASTER LTD., a Canadian corporation and SPIN MASTER, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>    Defendants. | Case No. 20-cv-00628<br><br>**Judge Joan B. Gottschall**<br><br>**Magistrate Judge Young B. Kim** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

    Plaintiffs Spin Master Ltd. and Spin Master, Inc. (collectively, "Spin Master" or "Plaintiffs") submit this Memorandum in support of their *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 2

    A. Spin Master's Trademarks, Copyrights and Products............................................. 2

    B. Defendants' Unlawful Activities ............................................................................ 4

III. ARGUMENT .................................................................................................................... 4

    A. Standard for Temporary Restraining Order and Preliminary Injunction ................ 6

    B. Spin Master Will Likely Succeed on the Merits..................................................... 6

    C. There Is No Adequate Remedy at Law, and Spin Master Will Suffer Irreparable Harm in the Absence of Preliminary Relief........................................................... 10

    D. The Balancing of Harms Tips in Spin Master's Favor, and the Public Interest Is Served by Entry of the Injunction .......................................................................... 11

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .......................................... 12

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the PAW PATROL Trademarks and PAW Patrol Copyrighted Designs Is Appropriate .......................................................... 12

    B. Preventing the Fraudulent Transfer of Assets Is Appropriate .............................. 13

    C. Spin Master Is Entitled to Expedited Discovery................................................... 14

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................ 15

VI. CONCLUSION ............................................................................................................... 15

**MEMORANDUM OF LAW**

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs are requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, false designation of origin, and copyright infringement against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants").  As alleged in Spin Master's Complaint, Defendants are selling and/or offering for sale products using infringing and counterfeit versions of Spin Master's federally registered trademarks, unauthorized copies of Spin Master's federally registered copyrighted designs, or both (collectively, the "Unauthorized PAW Patrol Products"), through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (collectively, the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Unauthorized PAW Patrol Products.  The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them.  Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation.  Spin Master is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrights, as well as to protect unknowing consumers from purchasing Unauthorized PAW Patrol Products over the Internet.  Defendants' ongoing unlawful activities should be restrained, and Spin Master respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces.

## II. STATEMENT OF FACTS

### A. Spin Master's Trademarks, Copyrights and Products

Spin Master is a leading global children's entertainment company that creates, designs, manufactures and markets a diversified portfolio of innovative toys, games, products and entertainment properties. *See* Declaration of Chris Harrs (the "Harrs Declaration") at ¶ 5. Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters and content, but also monetize that content through the creation, sale and licensing of products. *Id.* One of the categories of toys widely associated with Spin Master is PAW Patrol, a line of toys (collectively referred to herein as "PAW Patrol Products") based on the hit animated pre-school television series of the same name that has aired on Nickelodeon in the United States since August 2013 and has been sold to television networks in over 160 countries around the world. *Id.* at ¶ 6. PAW Patrol toy sales have generated millions of dollars in revenue for Spin Master and increased Spin Master's presence in the preschool toy market. *Id.* at ¶ 7.

Spin Master began using the PAW PATROL trademarks in 2014 and has continuously sold products under the PAW PATROL and other trademarks (collectively, the "PAW PATROL Trademarks"). *Id.* at ¶ 9. As a result of this long-standing use, strong common law trademark rights have amassed in the PAW PATROL Trademarks. *Id.* Several of the PAW PATROL Trademarks are registered with the United States Patent and Trademark Office. *Id.* at ¶ 10. PAW Patrol Products typically include at least one of the registered PAW PATROL Trademarks. *Id.* at ¶ 9.

The U.S. registrations for the PAW PATROL Trademarks are valid, subsisting, and in full force and effect. *Id.* at ¶ 11. The registrations for the PAW PATROL Trademarks constitute *prima facie* evidence of their validity and of Spin Master's exclusive right to use the PAW

2

PATROL Trademarks pursuant to 15 U.S.C. § 1057(b). The PAW PATROL Trademarks have been used exclusively and continuously by Spin Master, and have never been abandoned. *Id.*

The PAW PATROL Trademarks are distinctive when applied to the PAW Patrol Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards. *Id.* at ¶ 12. The innovative marketing and product designs of the PAW Patrol Products have enabled the PAW Patrol brand to achieve widespread recognition and fame and have made the PAW PATROL Trademarks some of the most well-known marks in the toy and children's entertainment industries. *Id.* at ¶ 13.

Genuine PAW Patrol Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the PAW Patrol brand. *Id.* at ¶ 15. Since at least as early as 2014, genuine PAW Patrol Products have been promoted and sold at the official pawpatrol.com website. *Id.* at ¶ 16. Sales of PAW Patrol Products via the pawpatrol.com website are significant. *Id.*

Spin Master has expended substantial time, money, and other resources in advertising and promoting the PAW PATROL Trademarks. *Id.* at ¶ 14. The PAW Patrol brand has become a global success that resonates with children worldwide, and PAW Patrol Products are among the most recognizable in the world. *Id.* at ¶ 8. Spin Master is a multi-million-dollar operation, and PAW Patrol Products have become among the most popular of their kind in the world. *Id.* The widespread fame, outstanding reputation, and significant goodwill associated with the PAW Patrol brand have made the PAW PATROL Trademarks valuable assets of Spin Master. *Id.* at ¶ 13.

Spin Master has registered its PAW Patrol Copyrighted Designs with the United States Copyright Office. The registrations include, but are not limited to, the registrations listed in paragraph 17 to the Declaration of Chris Harrs. *Id*. at ¶ 17.

### B. Defendants' Unlawful Activities

The success of the PAW Patrol brand has resulted in its significant counterfeiting. *Id. at* ¶ 18. Consequently, Spin Master has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id*. In recent years, Spin Master has identified many fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized PAW Patrol Products to consumers in this Judicial District and throughout the United States. *Id.* Spin Master's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Unauthorized PAW Patrol Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. *Id* at ¶¶ 20-24. If Defendants provide additional credible information regarding their identities, Spin Master will take appropriate steps to amend the Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Spin Master's reputation and the goodwill symbolized by the PAW PATROL Trademarks and the PAW Patrol Copyrighted Designs. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65 (b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their

4

wrongful use of the PAW PATROL Trademarks and/or copying and distribution of the PAW Patrol Copyrighted Designs, and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5-7. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Spin Master respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 501, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases through which Illinois residents can purchase Unauthorized PAW Patrol Products. *See* Complaint at ¶¶ 2, 24, 32, and 33. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.,* 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale

required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Spin Master substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*.

### B. Spin Master Will Likely Succeed on the Merits

    i.    <u>Spin Master Will Likely Succeed on Its Trademark Infringement, Counterfeiting, and False Designation of Origin Claims.</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or

6

colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Spin Master's Lanham Act claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08-cv-400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, the PAW PATROL Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. The PAW PATROL Trademarks have been used exclusively and continuously by Spin Master. Harrs Declaration at ¶ 11. The registrations for the PAW PATROL Trademarks are valid, subsisting, and in full force and effect. *Id*. The registrations constitute *prima facie* evidence of their validity and of Spin Master's exclusive right to use the PAW PATROL Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Spin Master has not licensed or authorized Defendants to use any of the PAW PATROL Trademarks, and none of the Defendants are authorized retailers of genuine PAW Patrol Products. *Id.* at ¶ 21. Thus, Spin Master satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the PAW PATROL Trademarks. The result is the same when considered in light of the

7

Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Spin Master has submitted extensive documentation showing that Defendants are selling Unauthorized PAW Patrol Products that look similar to genuine PAW Patrol Products and use infringing and counterfeit marks identical to the PAW PATROL Trademarks. Both Spin Master and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine PAW Patrol Products. Harrs Declaration at ¶¶ 8, 16, 19. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine PAW Patrol Products from Unauthorized PAW Patrol Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for PAW Patrol Products to purchase Unauthorized PAW Patrol Products instead. In that regard, Defendants advertise Unauthorized PAW Patrol Products using the PAW PATROL Trademarks and/or copying the PAW Patrol Copyrighted Designs. Harrs Declaration at ¶¶ 20, 22. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine PAW Patrol Products. *CAE, Inc. v. Clean Air Eng'g, Inc*., 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Spin Master is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

      ii.      <u>Spin Master Is Likely to Succeed on Its Copyright Infringement Claim</u>

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Spin Master under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the PAW Patrol Copyrighted Designs to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, Spin Master is the owner of at least eleven relevant federally registered copyrights. As to the second element, Defendants are willfully and deliberately reproducing the PAW Patrol Copyrighted Designs in their entirety, and are willfully and deliberately distributing copies of the PAW Patrol Copyrighted Designs to the public by sale. Defendants' unauthorized copies are identical or substantially similar to the PAW Patrol Copyrighted Designs. Such blatant copying infringes upon Spin Master's exclusive rights under

9

17 U.S.C. §§ 106. As such, Spin Master has proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

      **C.**      **There Is No Adequate Remedy at Law, and Spin Master Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Likewise, an injury to a copyright holder that is "not easily measurable in monetary terms, such as injury to reputation or goodwill, is often viewed as irreparable." *EnVerve, Inc. v. Unger Meat Co.,* 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the PAW PATROL Trademarks has and continues to irreparably harm Spin Master through diminished goodwill and brand confidence, damage to Spin Master's reputation, loss of exclusivity, and loss of future sales. Harrs Declaration at ¶¶ 27-31. The extent of the harm to Spin Master's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See*

*Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Spin Master will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Harrs Declaration at ¶ 32.

> D. **The Balancing of Harms Tips in Spin Master's Favor, and the Public Interest Is Served by Entry of the Injunction**

As noted above, if the Court is satisfied that Spin Master has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Spin Master will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Spin Master has demonstrated, Defendants have been profiting from the sale of Unauthorized PAW Patrol Products. Thus, the balance of equities tips decisively in Spin Master's favor. The public is currently under the false impression that Defendants are operating

11

their e-commerce stores with Spin Master's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Spin Master seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

#### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the PAW PATROL Trademarks and PAW Patrol Copyrighted Designs Is Appropriate

Spin Master requests a temporary injunction requiring Defendants to immediately cease all use of the PAW PATROL Trademarks, or substantially similar marks, and/or copying and distribution of the PAW Patrol Copyrighted Designs on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the PAW PATROL Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the PAW PATROL Trademarks and/or copying and distribution of the PAW Patrol Copyrighted Designs. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Spin Master is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute Unauthorized PAW Patrol Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Spin Master requests an *ex parte* restraint of Defendants' assets so that Spin Master's right to an equitable accounting of Defendants' profits from sales of Unauthorized PAW Patrol Products is not impaired.[2] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Spin Master meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Spin Master has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a) (1), Spin Master is entitled, "subject to the principles of equity, to recover ... defendant's profits." Similarly, Spin Master has shown a strong likelihood of succeeding on the merits of its copyright infringement claim, and therefore Spin Master is entitled to recover "…any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Spin Master's Complaint seeks, among other relief, that Defendants account for and pay to Spin Master all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Spin Master's request for a prejudgment asset freeze to preserve relief sought by Spin Master.

---

[2] Spin Master has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892 at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id*.

Spin Master has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### C. Spin Master Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id*. (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Spin Master respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Spin Master's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is

14

necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Spin Master's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Spin Master respectfully requests that expedited discovery be granted.

### V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Spin Master's evidence of counterfeiting, trademark infringement, copyright infringement, and false designation of origin, Spin Master respectfully requests this Court require Spin Master to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

### VI. CONCLUSION

Defendants' unlawful operations are irreparably harming Spin Master's business, its famous PAW Patrol brand, and consumers. In view of the foregoing and consistent with previous similar cases, Spin Master respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 28th day of February 2020.      Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Christopher S. Hermanson
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
chermanson@gbc.law
jchristensen@gbc.law

*Counsel for Plaintiffs*
*Spin Master Ltd. and Spin Master, Inc.*